STATE OF IOWA, Appellant, v. FRANK A. REICKENBACH et al., Appellees.

No. 46590.

FEBRUARY 6, 1945.

John M. Rankin, Attorney General, Robert L. Larson, Assistant Attorney General, Francis J. Kuble, County Attorney, and Anthony T. Renda, Assistant County Attorney, for appellant.

James W. Hall, of Des Moines, for appellees.

MULRONEY, J.—▮ The defendants were informed against in an information charging them with the crime of failing to label a chick box, as provided in chapter 122, Acts of the Forty-ninth General Assembly, when selling a box of chicks, on March 29, 1944, to Mrs. Donald Snowden. The above act provides:

"Sec. 5. All establishments licensed under this chapter, shall: * * *

"4. When selling or delivering baby chicks to a purchaser in the State, place the same in a box, crate, coop or other sanitary container for delivery. Each such box, crate, coop or other container shall be plainly labelled with the name of seller and description of contents. Such description of contents shall include name of breed and variety, percent of guarantee if chicks are sold as sexed chicks, date of hatch, number of chicks and any tests made on parent stock."

Section 8 of the act provides for a fine not to exceed one hundred dollars for a violation of any provision of the act.

Mrs. Snowden, an employee of the Iowa State Department of Agriculture, testified that the defendants own and operate Rick's Hatchery at 214 East Third Street in Des Moines, and on March 29, 1944, she went to Rick's Hatchery and purchased fifty White Rock chicks and twenty-five pounds of starter. The chicks were delivered to her in a box that bore no label of any kind showing the kind, make, character, or sex of the chicks nor the name of the hatchery. The box which was introduced in evidence and certified as an exhibit to this court bears no label of any kind or character. She asked for a bill and she was given a bill or invoice, which was also introduced in evidence and certified as an exhibit to this court. The invoice bears the heading: "Bought of Rick's Hatchery, 214 East 3d Street, Des Moines, Iowa." The invoice form shows the purchase of "50 chicks, 13 da WX 6.50." The testimony would indicate that the invoice carried only the information of the purchase of fifty chicks, thirteen days old, for $6.50.

There was other testimony by Mrs. Snowden and a Mr. O'Connell, who is chief of the hatchery division in the department of agriculture, which was admitted without objection, to the effect that Rick's Hatchery had been selling chicks without labeling the boxes for a period of nearly a year.

The trial court felt that the delivery of the invoice "meets the requirement of Chapter 122, section 5, No. 4 of the 49th General Assembly and for that reason the motion made by the defendants to dismiss the action is sustained."

The State has appealed. Under the provisions of section 13994, Code of 1939, the State may appeal from an adverse judgment, but this court cannot reverse or modify the judgment so as to increase the punishment (section 14012). See State v. Traas, 230 Iowa 826, 298 N. W. 862, and cases there cited. To the extent that this appeal might well serve to clarify or settle the law and a determination will be a beneficial guide to trial courts in the future, we entertain this appeal. State v. Kellison, 233 Iowa 1274, 11 N. W. 2d 371.

■ A bill or invoice is not a *label* within the meaning of paragraph 4, section 5 of chapter 122, Acts of the Forty-ninth General Assembly. The direction of the law is that the chick box "shall be plainly labelled with the name of seller and description of contents." The act goes further and states that the "description" shall include, namely: "name of breed and variety, percent of guarantee if chicks are sold as sexed chicks, date of hatch, number of chicks and any tests made on parent stock."

The requirement of the statute is not met by handing the purchaser an invoice containing some, or even all, of the data required to be on the label. The term "label" denotes affixation to or markings on a container indicating usually the contents of the container. As was said in United States v. Herzog, 2 Cir., N. Y., 145 F. 622, 623:. " '* * * there is no essential difference in the meaning of the term "label" as used in commerce and in common speech. * * *' '' Certainly, the most general idea of a label is not of a separate paper or invoice completely detached from the article or package it describes. The word formerly, in England, was the official word for postage stamp. Webster's New International Dictionary defines the word:

"A slip of paper, parchment, cloth, leather, metal, etc., affixed to anything, and indicating, usually by an inscription, the contents, ownership, destination, rating, etc.; as, the *label* on a bottle, a book, or a fuse."

In United States v. Sixty-five Casks Liquid Extracts, D. C., W. Va., 170 F. 449, 453, the Federal Court, in the Northern District of West Virginia, defined the word "label" as used in

the Federal Food and Drug Act, 21 U. S. C., section 1 et seq., by quoting Webster's definition and stating:

"The use of the word itself, therefore, carries the meaning that it is a descriptive paper affixed to the package, and in express terms the act requires the descriptive matter borne by the paper to include the statement of how much alcohol, etc., is contained in the package."

Although the defendants filed no brief, we have searched the authorities for any decisions that might uphold the trial court's ruling. We have found none. Many more cases can be found in 24 Words and Phrases, Perm. Ed., Label, 5, all ascribing to the word "label" the meaning we have herein expressed.

The judgment of the trial court is reversed but the cause is not remanded.—Reversed.

All JUSTICES concur.